(Paulding County Court of Common Pleas.)

DOYLE v. BRENEMAN et al.

*Void judicial sale of other lands to satisfy portion of debt not made by sale of mortgaged premises--Subrogation of purchaser—Dower.*

D. died owning lands in Paulding county, Ohio, covered by mortgage. The mortgagee having also died, his administrator brought suit to foreclose the mortgage making D's executor and the heirs and legatees of D., deceased, parties—service by publication was had—decree of foreclosure and sale of the mortgaged premises followed. The mortgaged premises not selling for enough to pay the amount found due by the court, an execution was issued and other lands sold to satisfy the debt due the mortgagee's estate. The lands so sold were purchased by B., and the money he paid as the purchase-price thereof applied to the payment of the debt of D's estate, on the mortgage.

In an action for partition brought by D's widow and joined in by the heirs and devisees of Doyle, deceased: Held, 1. The sale on execution was void, and B's title to the lands he purchased has failed, and B. is entitled to subrogation under sec-

tion .5410; 'Revised Statutes, and has a lien on the lands sold to the extent of the money he paid as applied to the debt of the estate of D., deceased, as against the heirs and legatees of D., deceased, but not as against the widow's claim of dower.

SNOOK, J.

The plaintiff, widow of Samuel Doyle, deceased, filed her petition herein for partition of the northeast quarter of the southeast quarter of section twenty-five of town one north, range four east of Ohio, making the heirs and legatees of Samuel Doyle deceased, and Samuel M. Breneman, parties defendant. The plaintiff's interest in the land was that of the widow of Samuel Doyle, deceased, who died seized in fee of the above described lands. The heirs and legatees—viz., the children of Samuel Doyle, deceased—filed their answers and cross-petitions in the case, averring their ownership in fee of the said lands, subject to the plaintiff's dower, and praying partition. The defendant, Breneman, averred in his answer that Samuel Doyle died testate, on the 23d of November, 1880, seized in fee of the above described lands. That John M. Pugh was, by the consideration of the Probate Court of Franklin County, Ohio, appointed executor of the last will of Samuel Doyle, deceased; that Doyle lived in Franklin county at his death. That in his lifetime and on the 13th of May, 1878, Doyle executed and delivered to one Dickey his promissory note for the sum of $4,972.78, and on the same day to secure the payment of the money named in said note, made, executed and delivered to said Dickey his real estate mortgage upon lands in Paulding county, but not upon the lands described in the plaintiff's petition. That subsequently Dickey died intestate, and H. C. Graves was duly appointed administrator of his estate. That in March of 1882,. Graves, as such administrator, began an action in the Court of Common Pleas for Paulding county, Ohio, to foreclose the mortgage given by Doyle, in his lifetime, to Dickey. The administrator and the heirs and legatees of Doyle, deceased, were made parties defendant; the administrator and some of the heirs were served by publication, and others personally. That the court on the hearing foreclosed the defendant's equity of redemption, and ordered the premises described in the mortgage sold and the money brought in for distribution. That a sale of the mortgaged premises was had, and the proceeds arising therefrom, after the payment of the costs in the case, were applied to the payment of the debt due Graves as the administrator of Dickey; but the money derived from the sale of the mortgaged premises was insufficient to pay said debt, and there remained due thereof, after said proceeds were exhausted, over seven hundred dollars. That afterward and on August 30, 1889, an execution, regular on its face, was issued by the clerk of the court of common pleas in the mortgage foreclosure case, on precipe filed by the plaintiff in that case, directed to the sheriff of Paulding county, commanding him in the usual language of that writ, to make the money therein named out of the property of the defendants. That the sheriff, pursuant to the command of the writ, levied upon, advertised and sold the said northeast quarter of the southeast quarter of said section 25, T. one north, range four east, to the defendant, Breneman, for $350. That on report of his proceedings by the sheriff, the court confirmed the sale, ordered a deed for the premises made to the purchaser by the sheriff, and distributed the proceeds of the sale, paying first the costs, and the remainder to H. C. Graves as the administrator of Dickey, deceased. That the administrator of Dickey, deceased, received of the proceeds of the sale the sum of $317.30. That since receiving his deed for said lands from the

sheriff, Breneman has paid taxes on said lands amounting to $30.51. That there was no personal judgment in the mortgage case in favor of the administrator of Dickey, deceased, and the clerk was wholly without authority, in law, to issue the said execution, and any and all accounts of the sheriff as well as proceedings of the court done or had pursuant to and upon the authority of, under or connected with said writ and having it for their foundation, were wholly void, and that Breneman had acquired no title to said land by the deed given him by the sheriff for the same, and prayed he might be subrogated to the rights of Graves as administrator of Dickey, deceased, and have a lien on the lands described for the purchase-money and taxes thereon by him paid.

On the hearing the proof established the facts as set up in the answer. Graves, administrator of Dickey, had caused execution to issue in the foreclosure case when there was no personal judgment (and none could have been entered) in the case. The sheriff had sold the land after the usual appraisement and advertisement to Breneman for $350. The costs were paid. Dickey's administrator received of the proceeds $317.30. The sale was confirmed and a deed ordered by the court. The sheriff made and delivered the deed to Breneman and he, Breneman, went into possession of the premises, and paid the taxes he averred he did. Breneman claims, that under the provisions of sections 5410 and 5411 of the Revised Statutes, he is entitled to be subrogated to the rights of Graves, administrator of Dickey, deceased, to the extent that the money paid by him went to pay the debt of Doyle, deceased.

Section 5410 reads as follows: "That whenever, upon the sale of property on execution, the title of the purchaser shall be invalid by reason of a defect in the proceedings, the purchaser may, in equity, be subrogated to the rights of the creditor against the debtor to the extent of the money paid and applied to the debtor's benefit, and to the same extent shall have a lien on the property sold as against all persons excepting bona fide purchasers, without notice; provided, however, that nothing herein contained shall be construed as requiring the creditor to refund the purchase-money by reason of the invalidity of any sale made upon his execution."

Section 5411 is as follows: "The last section shall apply, also, to all sales by order of court, sales by executors, administrators, guardians and assignees, and to all tax sales."

The plaintiff, against this contention of the defendant Breneman, urges that the provisions of these sections do not apply in this case, because the court was without jurisdiction to order the sale of the land in question; there was no personal judgment, and the court was therefore without authority to either sell the land on execution, or confirm such sale, once it was made, and any and all proceedings looking toward, or, in confirmation of, such sale were utterly void and of no effect; the deed of the sheriff purporting to convey the land to Breneman was void, and the phrase "defect in the proceedings," used in the statute, does not mean a proceeding absolutely void; and in support of this contention cited Nowler et al. v. Coit, 1 Ohio, 519; Libey v. Heirs of Ludlow, 4 Ohio, 469, and Beal, Salmond et al. v. Price, 13 Ohio, 368. The court say in the case reported in the 13th Ohio, "Purchase-money paid to an administrator upon a sale of an intestate's land cannot be recovered of the heirs where the sale is inoperative and the heirs recover the land," and apply the rule of caveat emptor to judicial sales, and unless the rule expressed in that case has been changed by statutory enactment, or overruled by subsequent decisions of the Supreme Court, it must be the rule by which the case at bar should be determined.

It will be observed, however, on an examination of the dates at which

these cases to which we have referred above were decided, and section 5410 was passed, that the enactment of the statute was subsequent to the decision of the last case cited in support of the plaintiff's position, i. e. that in the 13 Ohio, Id. That case was decided in 1844. Sections 5410 and 5411 were passed in 1846, Swan & Critchfield, 1149. The provisions of these sections are remedial in character, and if the legislature did not have in view the purpose to change the rule laid down by the court in the case cited, they could not have chosen more appropriate language had they entertained such a purpose. The language used is as broad and comprehensive as was necessary to effect such a change, and the subject-matter of the legislation the same as that to which the rule in the case is cited is directed. Can it, therefore, be doubted that the enactment of the sections of the statute to which we have referred, did change the rule expressed by the court in Beal, Salmond et al. v. Price, Supra., and that since their enactment they have furnished the rule by which all cases like the one now under consideration must be decided? However, it may be well to examine other provisions of the statutes and the later decisions of the Supreme Court before reaching final conclusions.

If the provisions of sections 5410 and 5411 do not apply to cases where the title of the would-be purchaser is absolutley void, where his title totally fails because of some defect in the proceedings, then their provisions must certainly reach, apply to and provide the remedy where the sale is voidable merely; where the purchaser's title fails not from any collateral attack on the judgment or proceedings under which he presumes to have acquired title, but by and through some direct attack made upon the proceedings, judgment or decree, resulting in the reversal of the same.

The statutes quoted must have some effect, must apply to some class of cases, and it is submitted there are but two classes to which the sections to which we have referred can apply—void and voidable titles acquired at judicial sales.

If, then, it be shown that the provisions of these sections do not apply where the title is voidable merely because of some defect in the proceeding, the conclusion is that they must and do apply where the proceedings are void, and the title therefore fails.

That this is so, appears, as we conceive, from the following: First, the language of the statute, i. e., "That whenever, upon the sale of property on execution, the title of the purchaser shall be invalid by reason of a defect in the proceedings, etc.," limits the operation of the provisions of the statutes to which we have referred to the class of cases in which the proceedings are so defective, that the purchaser acquires no title.

The language of the statute is "whenever the title of the purchaser shall be invalid." To be invalid is to have no force or effect in law— hence void. It is therefore to that class of cases of sales on execution in which the title of the purchaser to the land he thinks he has purchased, is void, that the provisions of section 5410 apply. But the title of a purchaser at judicial sale, can only become void where the proceedings leading up to the sale are void, and where his title is open to attack in a collateral proceeding, because by the provisions of section 5409 the rule is provided that the purchaser's title at judicial sale shall not be defeated in the class of cases open to direct attack; that is, by error proceedings. That section reads as follows: "If a judgment, in satisfaction of which lands or tenements are sold, be thereafter reversed, such reversal shall not defeat or affect the title of the purchaser; but in such case restitution shall be made by the judgment creditor, of the money for which lands or tenements were sold, with lawful interest from the day of sale."

Can it then, in view of the provisions of sections 5409 and 5410, be

doubted that section 5410 applies to that class of cases wherein the purchaser at judicial sale secures no title, where the "proceedings" are void? We think it cannot.

Indeed, it is upon the every fact that the proceedings are void that the plaintiff must rely to give her any standing in court. If they were erroneous merely, the title of the purchaser could not fail, but the judgment creditor must, on reversal, make restitution of the money for which the lands sold; section 5409. It is because the proceedings, under which the lands in this case were sold to Breneman, are void, that the plaintiff has a standing in court to bring this case, and for the same reason that Breneman can invoke the equitable provisions of section 5410, and thereby save himself from the loss of both the land and the money he paid for it, which went to pay the debts of the estate of Doyle, deceased.

Moreover, the rule of the statute is equitable and eminently just and fair. The plaintiff and the cross-petitioners (who are, indeed, the real plaintiffs in the case) acquired title to the estate of Doyle, deceased, and came into the property belonging to that estate, with it burdened by the debts of said decedent. The lands in question in this case were sold to pay a debt of Doyle, deceased, and all of the proceeds of that sale, save the costs of sale, were applied to the payment of the indebtedness of his estate, and by that amount, to the extent of such payment, the other property belonging to the estate was relieved and benefited. The cross-petitioners enjoy the advantages accruing form that payment.

Again, the statute saves to the estate any possible advantages to accrue from any increase in the value of the land, but limits the lien of such purchaser at such sale to the land sold, compelling him to bear any depreciation in the value of the land after his purchase. That the estate of Doyle, and therefore Doyle's heirs and legatees, should not be permitted to enjoy the benefits to flow from the payment of a portion of the debts of the estate, and at the same time retain the lands sold to Breneman without reimbursing him, seems but just.

Applying the rule of the statute, the estate of Doyle loses nothing, and Breneman is made whole, in the event the land is still worth as much as he paid for it. And it is only by the application of the rule of the statute that such a result can be reached. Breneman cannot pursue the creditor of Doyle's estate, to whom his money was paid. Except for the provision of the statute, he is without remedy, and must, because of inadequacy of both legal and equitable remedies, add to the property of Doyle's legatees the amount of his purchase payment to the estate of Doyle, deceased. We think it was to meet and provide against the sanction of so great an injustice the statute was passed.

The rule prescribed by the statute had long been in vogue in several of the states of the union before its enactment in this state, and the statute is but declaratory of a rule of equity recognized by many of the courts of last resort of our sister states. Freeman on Void Judicial Sales, pages 98 and 105. Perry v. Adams and Wife, 2 A. M. St. 326, and Scott v. Dunn, 30 A. M. Decis. 177, and Pomeroy's Equity, section 1419, page 2191, note.

Since the enactment of section 5410, the Supreme Court of this state have recognized the rule in at least three cases, viz: Endel v. Leibrock, 33 Ohio St. 254; Riddle v. Roll, 24 Ohio St. 572, and Wehrle v. Wehrle, 39 Ohio St. 365, the last of which is directly in point.

Having determined that the statute applies, Breneman is then "subrogated to the right of the creditor" of Doyle's estate, "against the debtor, the estate," to the extent of the money paid and applied to the debtor's benefit, and, to the same extent, shall have a lien of the property sold.

To what right is Breneman subrogated then?

The debts of Samuel Doyle, deceased, were a charge against his estate in the nature of a lien upon it for which that estate was liable. Gill v Pinney, 12 Ohio St. 8, and his executor was authorized by statute to se¹ all of his estate, both personal and real, if necessary to pay the debts his decedent.

It is to this lien or charge upon the estate of Samuel Doyle, deceased, that Breneman is subroagted, and the statute gives a specific lien on the land sold to secure the repayment of so much of the purchase-money paid as was applied to the payment of the debts of Doyle's estate.

This conclusion does not militate against the right of the plaintiff to have dower assigned. Found due Breneman on his claim for purchase-money and taxes paid, $455. Lien declared, and sale ordered.

Jones & Shuster, for plaintiff and cross-petitioners.

Spook & Wilcox, for Breneman.